## UNITED STATES DISTRICT COURT
### DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

APPLICATION AND AFFIDAVIT

xxxxxxxxxxxxxxxxxx,
Xxxxxxxxxxxxx, Northeast
Washington, D.C.

FOR SEARCH WARRANT

CASE NUMBER:

TO: <u>Special Agent Frank Oliver,</u> being duly sworn depose and say:

I am a <u>Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives</u> and have reason to believe that

on the premises known as (name, description and or location)

xxxxxxxxxxxxxxxxxx, Xxxxxxxxxxxxx, NORTHEAST, WASHINGTON, D.C. (This location is described as a two story red brick Apartment building with white framed windows & cream, colored trim located on the north side of Xxxxxxxxxxxxx, between 20th & 21ST Streets in Northeast, Washington, D.C. The front door to the building marked "2010" is white in color, with a glass window in the upper portion of the door. There is a silver colored doorknob & deadbolt located in the middle portion on the left side of the white door. Directly above the front door and affixed to the building are the numbers "2010," that are black in color. When facing the building marked "2010", the building attached and directly to the left of building "2010" in numbered "2008." When facing the building "2010", the building attached and directly to the right of building "2010" is numbered 2012. Xxxxxxxxxxxxx is located within the building marked "2010." Xxxxxxxxxxxxx is located on the left side of the second floor when facing the front of building "2010." The front door to xxxxxxxxxxxxx is white in color, with a gold colored doorknob on the right side, in the middle portion of the door. Directly above the gold colored door knob is a gold colored deadbolt. In the upper middle portion of the door to xxxxxxxxxxxxx is a gold colored door knocker & peephole. Within the door knocker is a black placard, displaying a gold colored number "3." Xxxxxxxxxxxxx is the first door on the right hand side after exiting the stairs to the second floor of building "2010."

in the District of Columbia, there is now concealed certain property, namely (describe the person or property)

   **See Attachment A**

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence and instrumentalities of alleged crime(s): In violation of Title 21, United States Code, Section 841(a)(1).

The facts to support the issuance of a Search Warrant are as follows:

See Affidavit which is incorporated herein for reference, continued on the attached sheet and made a part hereof.

_____
Frank Oliver, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
(Affiant)

Sworn to before me, and subscribed in my presence
_____ at Washington, D.C.
Date and Time Issued

_____
United States Magistrate Judge
Signature of Judicial Officer

Case 1:07-mj-00612-AK   Document 1   Filed 11/30/2007   Page 2 of 2

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
WASHINGTON, D.C.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **WASHINGTON, D.C.** This location is described as a two story red brick Apartment building with white framed windows & cream colored trim located on the north side of Xxxxxxxxxxxxxxxxxxxxxxxxxxx, between 20th & 21ST Streets in Northeast, Washington, D.C. The front door to the building marked "2010" is white in color, with a glass window in the upper portion of the door. There is a silver colored doorknob & deadbolt located in the middle portion on the left side of the white door. Directly above the front door and affixed to the building are the numbers "2010," that are black in color. When facing the building marked "2010", the building attached and directly to the left of building "2010" in numbered "2008." When facing the building "2010", the building attached and directly to the right of building "2010" is numbered 2012. Apartment #3 is located within the building marked "2010." Apartment #3 is located on the left side of the second floor when facing the front of building "2010." The front door to apartment #3 is white in color, with a gold colored doorknob on the right side, in the middle portion of the door. Directly above the gold colored door knob is a gold colored deadbolt. In the upper middle portion of the door to apartment #3 is a gold colored door knocker & peephole. Within the door knocker is a black placard, displaying a gold colored number "3." Apartment #3 is the first door on the right hand side after exiting the stairs to the second floor of building "2010."

Your affiant, Frank Oliver, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Frank Oliver, of the Bureau of Alcohol, Tobacco and Firearms (ATF). I am currently assigned to the Washington Area High Intensity Drug Task Force (HIDTA). I have been a Special Agent with ATF for approximately 7 1/2 years. Prior to becoming a Special Agent with the ATF, your affiant was a Narcotics Investigator/ Officer with the United States Park Police for

1

2. approximately 10 years. Your affiant has conducted numerous narcotic trafficking and gang related investigations. Your affiant has participated in the preparation, presentation an execution of numerous search and arrest warrants, which have resulted in the recovery of narcotics, weapons and documentary evidence indicative of narcotics and firearm trafficking groups. In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

3. I have participated in the execution of over three hundred search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage. In addition, these warrants have also led to the recovery of items such as shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

4. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances, including cocaine. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

   A) It is common for narcotic traffickers to secrete narcotics in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

   B) It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep

    C) receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

    D) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the premises and/or vehicles.

    E) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as property derived from the distribution of narcotics, and such items are often kept in their residence.

    F) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences and/or vehicles for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

1. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

2. The facts and information set forth in this affidavit are based upon your affiant's personal knowledge, training, observations, experience and investigation and observations of other Investigators involved in this investigation. All observations that were not personally made by your affiant were related directly to your affiant by the persons who made such observations or who corroborated such information. Additionally, information was gathered through the use of a confidential reliable source, hereafter referred to as CI-1. CI-1 has provided your affiant, as well as other local law enforcement agencies with truthful information and proven reliable and credible on each and every occasion. Information CI-1 has provided your affiant has been independently corroborated by your affiant and members of other local law enforcement agencies and found to be true and accurate. CI-1 has supplied your affiant and other local law enforcement agencies with reliable information on at least 75 separate occasions in the past that has led to the issuance of narcotic related search warrant(s), which have resulted in the seizure of various controlled substances and firearms. CI-1 has personally used various types of controlled substances and is able to recognize various types of narcotics in their various forms and is familiar with the methods in which drug dealers conceal, package, and traffic their product for both wholesale and street level distribution. CI-1 has never been known to provide your affiant, members of this agency, or any other law enforcement entity with untruthful or unreliable information.

3. Within the past week, CI-1 spoke with your affiant regarding a subject known to it as **Julian SUTTON** who lives at xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **WASHINGTON, D.C.** CI-1 stated that it knew **SUTTON** to be currently operating an illegal drug operation out of his residence at xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **WASHINGTON, D.C.** CI-1 stated that **SUTTON** often possesses and sells illegal drugs, specifically Phencyclidine (PCP), from the residence at xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **WASHINGTON, D.** CI-1 stated that SUTTON has been arrested in the past for possession of PCP.

4. Therefore within the last 72 hours your affiant and other members of the ATF Washington 1 HIDTA Taskforce met with CI-1 for the purpose of making a controlled purchase of Phencyclidine (PCP) from xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **Washington D.C.** Your affiant searched CI-1 and found it to be free of both monies and controlled substances. Your affiant then gave CI-1 a sum of pre-recorded government funds and escorted CI-1 to the 2000 Block of Xxxxxxxxxxxxxxxxxxxxxxxxxx, Washington, D.C. Your affiant directed CI-1 to go directly to xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **WASHINGTON, D.C**. and purchase a quantity of PCP from JULIAN SUTTON from inside of

xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, **WASHINGTON, D.C.**

4

5. Your affiant observed CI-1 walk directly to the building described as 2010 Xxxxxxxxxxxxxxxxxxxxxxxxxx, WASHINGTON, D.C. and enter the building through the front entrance. After a brief period of time, the source was observed exiting the building described as 2010 Xxxxxxxxxxxxxxxxxxxxxxxxxx, WASHINGTON, D.C. and respond directly back to your affiant at a predetermined location. At this time, CI-1 surrendered a quantity of PCP to your affiant. A portion of the suspected PCP substance was field tested by your affiant and the results were positive for the presence of PHENCYCLIDINE (PCP). The source then stated that it had exchanged the pre-recorded government funds with the subject known to it as JULIAN SUTTON for the PCP inside of **xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, WASHINGTON, D.C.** Your affiant then searched the source and again found it to free of both monies and controlled substances.

.

6. A check of the records compiled by the National Crime Information Center (NCIC), JUSTIS-Court Services and Supervision Agency and the Metropolitan Police Department databases was conducted on JULIAN DUPREE SUTTON (Date of Birth: Xxxxxxxxxxxxxxx; Social Security Number xxx-xx-3719). These records indicate that SUTTON has prior drug and firearm related arrests in Washington, D.C. Of theses arrest, two were for PCP violations that resulted in two convictions for possession of PCP. These systems indicate that SUTTON is currently on probation for one of the PCP convictions.

7.

8. One of the above referred identification database system indicates that SUTTON'S home address is **xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx NORTHEAST, WASHINGTON, D.C.** In addition, this database contains booking photographs of BALLARD from his prior arrests. After obtaining one of these booking photographs, your affiant again met with CI-1 and showed CI-1 a photograph of BALLARD. CI-1 stated that SUTTON was the individual who it purchased the PCP from within **xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, WASHINGTON, D.C.**

9.

10. In summary, based on the information contained herein, your affiant believes that JULIAN DUPREE SUTTON is utilizing **xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, NORTHEAST, WASHINGTON, D.C.** as a base to conduct and facilitate an illegal drug trafficking operation involving PCP. Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of PCP, in violation of Title 21, United States Code, Section 841(a)(1). Your affiant believes that probable cause exists that within **xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, WASHINGTON, D.C.**

there is presently concealed illegal drugs such as PCP, drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency and/or other proceeds of narcotic sales.

5

These items are listed more completely on a separate sheet included with this application and labeled "Attachment A". I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and curtilage, of **xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx, NORTHEAST, WASHINGTON, D.C.** authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Frank Oliver
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives


Sworn to and subscribed before me this _____ day of November, 2007.


_____
United States Magistrate Judge
District of Columbia

6

Case 1:07-mj-00612-AK     Document 1-2     Filed 11/30/2007     Page 7 of 7

## ATTACHMENT A

### List of Items to be Seized at Premises

1. Illegal drugs, to include, but not limited to, Phenecyclidine.

2. Paraphernalia for packaging, cutting, weighing and distributing illegal drugs, including but not limited to, scales, baggies, and cutting agents.

3. Firearms, firearm magazines, firearm attachments, ammunition, firearm parts and holsters as well as documentation of the purchase, storage, possession, disposition, dominion and control of firearms, including paperwork and receipts.

4. United States currency, precious metals, jewelry and financial instruments.

5. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

6. Address and telephone books and papers reflecting names, address and telephone numbers.

7. Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashier's checks related to the obtaining, secreting, transfer, and concealment of assets and/or the expenditure of money.

8. Electronic equipment, such as mobile telephones, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, computers, and any information stored in memory or contained in any related hardware and software.

9. Photographs and/or video tapes, in particular, those photographs and/or video tapes of co-conspirators, assets, controlled substances, or of individuals with controlled substances and those that assist in identifying associates and conspirators.

10. Indicia of occupancy, residence, and ownership of the premises, including but not limited to, utility and telephone bills, mail matter, canceled envelopes, and keys.

    11. Any locked or closed container(s) believed to contain any of the above listed evidence.